IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  )   Plaintiff,   )  )  v.   )  )  RUSSELL J. FRAUENDORFER,  )  )   Defendant.   )   ) | 8:04CR64    MEMORANDUM AND ORDER |

**Background**

This matter is before the court on the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion"), filed by the defendant, Russell J. Frauendorfer ("Frauendorfer"). Filing No. 95. Frauendorfer filed a brief in support of his § 2255 motion. Filing No. 96. The government filed an answer to the § 2255 motion and a brief in support of the government's answer. Filing Nos. 98, 99. Frauendorfer then filed a reply brief. Filing No. 106.

On February 19, 2004, an indictment charged Frauendorfer with five counts, including conspiracy to commit bank robbery, two counts of bank robbery, and two counts of brandishing a firearm during a bank robbery. Filing Nos. 9, 10. On February 20, 2004, Frauendorfer entered a plea of not guilty. Filing No. 12. On June 14, 2004, Frauendorfer was found guilty on Counts I, II and III and convicted of violating 18 U.S.C. § 371, 18 U.S.C. §§ 2113(a) & (d), and 18 U.S.C. §§ 924(c)(1)(A)(ii) & (c)(1)(C)(I).[1] Filing Nos. 42,

---

[1] Frauendorfer was sentenced to 48 months for Counts I and II, to be served concurrently. Filing No. 56. On Count III, Frauendorfer was sentenced to a term of 84 months, to be served consecutively. *Id.*

56. On November 14, 2005, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") affirmed Frauendorfer's conviction. Filing No. 89.

## § 2255 Claims

Frauendorfer claims his Sixth Amendment right to effective assistance of counsel was violated. Filing No. 96. Frauendorfer alleges four grounds which he believes support his argument that his right to effective assistance of counsel was violated. *Id.* at 1-26. Frauendorfer first contends that his attorney, Alan G. Stoler ("Stoler"), failed to object to evidence the government submitted which indicated the Bank of Leigh in Creston, Nebraska, was Federal Deposit Insurance Corporation ("FDIC") insured. *Id.* at 1-10. Second, Frauendorfer states Stoler failed to call Tom Foltz ("Foltz") as a witness. *Id.* at 11. Third, Frauendorfer argues Stoler failed to elicit testimony from Frauendorfer regarding Frauendorfer's activities on the day of the bank robbery. *Id.* at 12-17. Lastly, Frauendorfer claims Stoler failed to review all discovery materials prior to trial. *Id.* at 18-26.

## Ineffective Assistance of Counsel

Claims of ineffective assistance of trial counsel are properly raised in proceedings under 28 U.S.C. § 2255. *See,* e.g., *United States v. Smith*, 62 F.3d 1073, 1078 (8th Cir. 1995). "A claim of ineffective assistance of counsel should normally not be part of a direct appeal but should be raised in collateral proceedings under 28 U.S.C. § 2255 because such a claim usually cannot be advanced without development of the record." *Smith*, 62 F.3d at 1078. *Accord United States v. Guzman-Landeros*, 207 F.3d 1034, 1034 (8th Cir. 2000); *United States v. Mitchell*, 136 F.3d 1192, 1193 (8th Cir. 1998).

The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense." U.S. Const. amend. VI. "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 535 U.S. 162, 166 (2002), *citing* Strickland v. Washington, 466 U.S. 668, 685-86 (1984). *See also* Bell v. Cone, 535 U.S. 685, 695 (2002):

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," [*Strickland*], 466 U.S., at 688 . . . ; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*., at 694. . . . Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," *id*., at 687 . . . , and the sentence or conviction should stand.

*Bell,* 535 U.S. at 695.

> The *Strickland* test has two parts: whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer "no" to either question, then we need not address the other part of the test. . . . Under the first part of the *Strickland* test, we consider counsel's performance objectively and gauge whether it was reasonable "under prevailing professional norms" and "considering all the circumstances." We look at counsel's challenged conduct at the time of his representation of the defendant and we avoid making judgments based on hindsight.

Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000) (citation omitted).

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

*Strickland* requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy." *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (citation omitted).

To meet the prejudice prong of the test, the defendant must show a reasonable probability that absent his counsel's deficient conduct, the outcome of the defendant's case would have been altered. See *Mickens*, 535 U.S. at 166, *citing Strickland*, 466 U.S. at 694. "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens* at 166, *citing Strickland* at 694. More specifically, "[t]o show prejudice, [the defendant] must show a reasonable probability that absent the alleged errors of counsel he would have been found not guilty." *United States v. Robinson*, 301 F.3d 923, 925 (8th Cir. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As explained in *Strickland*, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is always on the "fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## Analysis

**FDIC Insurance Element of Conspiracy Count**

Frauendorfer alleges three incidents, relating to the FDIC insurance element of his conspiracy count, where Stoler failed to object to the admission of testimony and exhibits which violated his right to effective assistance of counsel. According to Frauendorfer, Stoler should have objected to: Linda Luedtke's ("Luedtke") "testimony concerning the FDIC insurance status of the Bank of Leigh in Creston, Nebraska"; the admission of the

certified copy of the FDIC insurance certificate; and the affidavit of Valerie Best. Filing No. 96 at 1.

Luedtke, a Bank of Leigh employee, testified, in addition to details surrounding the robbery, that the FDIC insured the Bank of Leigh. Filing No. 71 at 115-152. Also "Exhibit 1" was received into evidence. Filing No. 71 at 119: 24. "Exhibit 1" included a "certified copy of proof of insurance," an affidavit from the Assistant Executive Secretary of the FDIC, and excerpts from FDIC records (Exhibits "A" and "B"). (Exhibit 1).

When asked if the deposits at the Bank of Leigh in Creston, Nebraska, were FDIC insured, Luedtke replied, "Yes, they are." Filing No. 71, at 119:16-9. Immediately after Luedtke's answer, "Exhibit 1" was admitted into evidence without any objection. *Id.* at 119:24. In addition, Luedtke testified she has worked at the Bank of Leigh since 1989; she is a full-time employee; and her duties include receiving deposits, waiting on customers, taking care of certificate of deposits, and assisting with day-to-day activities. Filing No. 71 at 120:2-8.

When examining "Exhibit 1," it is apparent the FDIC certificate is self-authenticating under Rule 902(1) of the Federal Rules of Evidence. Rule 902(1) reads,

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: (1) **Domestic public documents under seal.** A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

Fed. R. Evid. 902(1).

The court finds the admission of the certified copy of the Bank of Leigh's insured status fulfills this rule. The certificate in "Exhibit 1" contains a seal from a United States

department, i.e., the Federal Deposit Insurance Corporation. Also, the certificate contains a signature which is an attestation to the validly of the certificate. Thus, the FDIC element was fulfilled without error and Stoler had no reason to object. For this reason, there is no need to consider the affidavit of Valerie Best because the certificate is self-authenticating.

Further, for the sake of argument, if Stoler's conduct were considered deficient, Frauendorfer would fail on the second prong of the *Strickland* test. Frauendorfer would have to prove that Stoler's deficient conduct was prejudicial to Frauendorfer. Frauendorfer's claim fails here because Frauendorfer has failed to offer any proof that the Bank of Leigh is not FDIC insured. Thus, Stoler's conduct cannot be prejudicial to Frauendorfer.

**Failure to Elicit Testimony from Tom Foltz**

Frauendorfer's second claim states his right to effective assistance of counsel was violated when Stoler failed to call Foltz as a witness. Filing No. 96 at 11. Foltz, owner of the Glock handgun in question in this case, declared that "Russell (Frauendorfer) and I had an agreement. If Russell loaned me the money for the pistols, then I'd let him borrow them pretty much whenever he asked, until I paid him back." Filing No. 106 at Exhibit 1, ¶¶ 4, 5. Frauendorfer believes Foltz would have testified that ". . . THE GLOCK HANDGUN WHICH FORMS THE BASIS OF PETITIONER'S [Frauendorfer] CONVICTION UNDER 18 U.S.C. § 924(c) WAS LOCKED IN FOLTZ'S SAFE AT THE SAME TIME IT WAS ALLEGEDLY BRANDISHED BY FRAUENDORFER." Filing No. 96 at 11. Thus, Frauendorfer could not have been convicted under 18 U.S.C. § 924(c).

Attached to Frauendorfer's "reply brief" is Foltz's declaration. Filing No. 106 at Exhibit 1. In Foltz's declaration he states, ". . . I cannot recall with a certainty that my Glock was locked away at the time of the Creston bank robbery. I can only say now that I think

it was." *Id.* at Exhibit 1 ¶ 4. The court finds this evidence insufficient to reverse Frauendorfer's conviction of the above stated charge. Stoler's actions do not qualify as ineffective assistance of counsel, because Foltz cannot state with certainty where the Glock was located on the day the Bank of Leigh was robbed. Thus, Frauendorfer fails to offer evidence that would suggest a different verdict had Foltz testified. Stoler's actions cannot have prejudiced Frauendorfer.

**Failure to Elicit Testimony from Frauendorfer Regarding the Day of the Bank Robbery**

As mentioned above, in order for Frauendorfer to prevail, he must overcome a strong presumption that gives deference to the attorney's actions during trial. *Strickland*, 466 U.S. at 689. On June 11, 2004, Frauendorfer had his opportunity to testify. Filing No. 75 at 807-904. Frauendorfer argues that Stoler should have asked Frauendorfer what Frauendorfer was doing the day of the robbery. Filing No. 96 at 12. If Stoler would have questioned Frauendorfer about events on the day of the bank robbery of which Frauendorfer was convicted, Frauendorfer would have been susceptible to cross-examination on that subject. The court recalls that Frauendorfer's testimony was not particularly credible. Not to expose him to additional cross-examination is a reasonable trial tactic. The court finds Stoler's actions were not deficient but sound trial strategy.

**Stoler's Failure to Review all Discovery Material and Elicit Testimony from Virginia Frauendorfer and Jill Hessel**

Frauendorfer claims that Stoler failed to review all of the discovery materials, namely Frauendorfer's banking records. Filing No. 96 at 19. Frauendorfer states Stoler's invoice is evidence that Stoler didn't review all of the discovery material. *Id.* at 18. According to

8

Frauendorfer, "The U.S. Attorney's Office made discoverable materials available to defense counsel. The documents are sequentially 'Bates Stamped' 1 through 1216." *Id.* Frauendorfer states that Stoler's invoice, "Exhibit 5" attached to Frauendorfer's Brief, proves that Stoler only reviewed the discovery materials through 950. *Id.* Thus, Frauendorfer claims Stoler "never read the remaining 265 pages of discovery materials." *Id.* Frauendorfer claims that a review of the remaining discovery materials would have allowed Stoler to rebut the government's assertion that certain deposits that Frauendorfer made were proceeds from the bank robbery.[2] *Id.* at 19.

Frauendorfer's claim that Stoler failed to review all of the discovery materials is without merit. Reviewing the transcript, it is apparent that Stoler had reviewed such discovery materials. *See* Filing No. 75 at 901-2. Addressing the government's assertion that deposits during the months of July and August of 2003 were proceeds from the bank robberies, Stoler asked Frauendorfer, "You were shown your bank records for the months of, I believe it would be July and August of 2003. It reflects at times there were cash deposits into your account?" Filing No. 75 at 901:18-21. Frauendorfer responded, "Yes." *Id.* at 901:22. Stoler then asked, "During the months of March, April, May of 2003, would you deposit cash into your account during those months?" Filing No. 75 at 901:23-4. In addition, Stoler asked, "Was it unusual for you to deposit cash into your checking account?" Filing No. 75 at 902:1-2. Further, to illustrate to the jury Frauendorfer's banking practices, Stoler asked, "Would there be occasions that you would withdraw cash and then in turn place that cash back into your checking account?" Filing No. 75 at 902:19-21.

---

[2] Frauendorfer also argues that "Had attorney Stoler read the final 265 pages of discovery material, a record of that activity would appear in Stoler's invoice as a business record." Filing No. 96 at 18.

9

Stoler's questions posed to Frauendorfer are contrary to Frauendorfer's claim that Stoler did not review all of the discovery material. The record illustrates that Stoler did address the cash deposits that took place before the bank robberies. *See* Filing No. 75 at 901-2. According to the indictment, the Bank of Leigh was robbed on May 30, 2003. Filing No. 9 at 2. Stoler asked questions regarding Frauendorfer's banking practices during months prior to the robbery. Filing No. 75 at 901:23-4. Stoler asked questions to illustrate Frauendorfer's banking practices before the possibility that proceeds from the Bank of Leigh robbery could be deposited into Frauendorfer's account.

In addition, Frauendorfer states that the testimony that Stoler elicited from Frauendorfer about the deposits of March, April and May was merely an *ipse dixit* assertion. Filing No. 96 at 24. Frauendorfer claims that, "Had attorney Stoler allowed Frauendorfer to support his testimony through the corroboration of the banking records, the jury would likely have dismissed the Prosecutor's argument about the cash deposits into Frauendorfer's checking account as irrelevant." *Id.* Thus, Frauendorfer believes the banking records prior to the bank robberies should have been admitted into evidence.

This argument, too, fails when reviewing the banking records Frauendorfer attached to Filing No. 96. Frauendorfer includes six deposit slips dating from April 11, 2003, to May 27, 2003. *Id.* at Exhibit 4. The total amount deposited equals $1,154.[3] *Id.* The government offered "Exhibit 82," which contains Frauendorfer's banking records during July 10, 2003, to August 8, 2003, or roughly about a month. Exhibit 82. Excluding Frauendorfer's payroll deposits, Frauendorfer was able to deposit $1,741.19 during this period which is around two weeks shorter than the banking records Frauendorfer attached

---

[3]Some of the photocopied banking deposit receipts are unclear; thus, the court computed the amounts to the best of its ability.

10

to Filing No. 96.[4] Thus, Frauendorfer's claim that the jury would have disregarded the government's assertion that the July and August deposits were proceeds from the bank robberies is without merit. Clearly, there is a difference between the amounts deposited. The court finds Stoler's failure to admit the banking records attached to Filing No. 96 was sound trial strategy because it is the court's belief admitting such would have hurt Frauendorfer's case. Thus, Frauendorfer is unable to prove that Stoler's conduct was deficient.

Further, Frauendorfer claims that Stoler should have,

> . . . called as a witness Virginia Frauendorfer, ("Ms. Frauendorfer") who in turn would have testified that she routinely provided money to Russell Frauendorfer to assist him when he ran into financial difficulty. . . . Stoler could have also elicited testimony from Jill Hessel ("Hessel") while she was on the stand that she often gave Russell Frauendorfer cash to cover checks that he would write out to pay her doctor bills as well as to pay her other various bills. The banking records, combined with the testimony of Virginia Frauendorfer and Jill Hessel would have buttressed Russell Frauendorfer's testimony and rebuked the Prosecutor's claim that Russell Frauendorfer's deposits were proceeds from bank robbery.

Filing No. 96 at 19.

The Eighth Circuit has held, ". . . the 'calling or not calling of witnesses is a matter normally within the realm of the judgment of counsel,' and this judgment will not be second-guessed by hindsight." *Frank v. Brookhart*, 877 F.2d 671, 674 (8th Cir. 1989) quoting *Sherrill v. Wyrick*, 524 F.2d 186, 190 (8th Cir. 1975).

In Ms. Frauendorfer's declaration, she fails to mention any specific loans that would rebut the government's assertion that the deposits at issue were proceeds from the bank robberies. Filing No. 96, Exhibit 3, ¶ 7. Without Ms. Frauendorfer specifying to the actual

---

[4] If the court included in its calculation the deposits Frauendorfer made during July 10, 2003, to August 8, 2003, the total amount of deposits would equal $2,602.68. Exhibit 82.

11

banking deposits she lent to Frauendorfer, the court is unable to support Frauendorfer's claim.

Lastly, Hessel testified during Frauendorfer's trial as a government's witness. Filing No. 74 at 719-733. Frauendorfer fails to state any specific transactions which Hessel could offer to rebut the government's assertion that Frauendorfer's deposits were proceeds from the bank robberies. Thus, Frauendorfer's claim fails in regard to the testimony of Hessel and Ms. Frauendorfer.

For the abovementioned reasons, Frauendorfer's claim for ineffective assistance of counsel is without merit. Thus, there is no legal reason for this court to order an evidentiary hearing.

THEREFORE, IT IS ORDERED that Frauendorfer's § 2255 motion, Filing No. 95, is denied.

DATED this 11th day of August, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge